UNITED STATES v. AYRES.

*(District Court, D. South Dakota. June, 1891.)*

GRAND JURY—CONSTITUTIONAL LAW.
    A direction by the court in the *venire* for a grand jury, that the jury shall be summoned from a certain part of the district, as allowed by Rev. St. U. S. § 802, is not in conflict with Const. U. S. Amend. 6, which provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy trial by an impartial jury of the state and district wherein the crime shall have been committed."

At Law.

Motion to quash indictment, on the ground that the grand jury finding and returning the same was not a legal grand jury, for the reason that the *venire* issued by the court directed that the requisite number of jurors should be summoned from a named part of the district.

*W. B. Sterling*, Dist. Atty.
*Winsor & Kittridge*, for defendant.
Before SHIRAS and EDGERTON, JJ.

SHIRAS, J. The motion to quash the indictment is based upon the claim that it is not within the power of the court to cause a grand jury to be summoned from a certain portion or division of the district, and that, if such limitation is made in the *venire*, a jury summoned in accordance with its provisions would not be a legal grand jury, and therefore indictments returned by such a body would not be valid. In support of the motion, reference is made to the sixth amendment to the constitution of the United States, which provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." Even if the construction of this amendment is admissible that would hold it applicable to grand juries, it does not bear the meaning

sought to be given it, for its purpose was to prevent the evil of a person charged with a criminal offense being taken for trial to some distant place. The burden caused to litigants in being compelled to follow the king's progresses throughout England had become so great at an early day that it called for correction in *Magna Charta*, by the provisions of which the court of common pleas was fixed at Westminster, and assizes were required to be held in the different counties. Indeed it became a recognized principle of the common law that one accused of crime was entitled to a trial before a jury of the vicinage. When the constitution of the United States was adopted, the need of extending proper protection in this particular was at once perceived, and the sixth amendment was, with others, submitted to the states by the first congress assembling after its adoption, to-wit, in September, 1789. This same congress, in adopting the judiciary act, approved September 24, 1789, by section 29 thereof enacted:

"That, in cases punishable with death, the trial shall be had in the county where the offense was committed, or, when that cannot be done without great inconvenience, twelve petit jurors, at least, shall be summoned from thence, and jurors in all cases to serve in the courts of the United States shall be designated by lot or otherwise in each state, respectively, according to the mode of forming juries therein now practiced, * * * and shall be returned, as there shall be occasion for them, from such parts of the district, from time to time, as the court shall direct, so as shall be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burthen the citizens of any part of the district with such services."

It cannot be for one moment supposed that in framing the act which was to form the foundation for the judicial system of the country congress intentionally incorporated therein provisions which were deemed to be so iniquitous and unjust to the citizens as to call for the adoption of an amendment to the constitution to protect the citizen therefrom in the future. It cannot be possible that in framing the sixth amendment congress intended thereby to secure a constitutional enactment requiring juries to be summoned from an entire state or district, and at the same time, by the provisions of the judiciary act, declared that the courts should have the power to direct the juries to be summoned from parts only of the district. The constitutional provision was intended to fix the maximum limit within which the citizen charged with a criminal offense could be put upon his trial; but it is not to be construed to be a requirement to the effect that the jury must be summoned from the entire district, regardless of its extent, or of the burden and expense that would be thus caused to the government and the jurors alike. This provision of the statute, authorizing the court to direct what parts of the district a given jury, grand or petit, shall be summoned from, has remained a part of the statute law since its adoption in 1789, and now forms section 802 of the Revised Statutes; and I have no doubt that it has been acted upon in all, or nearly all, the districts of the Union. Its constitutionality cannot be successfully impeached at this late day, and, if constitutional, it cannot be questioned that its provisions fully sustain the action of the court in directing that the grand jury summoned for

the term at Sioux Falls, and which found the present indictment, should be drawn from the parts of the district named in the *venire*. The purpose of the court in directing the jury to be summoned from a part only of the district was to save unnecessary expense to the government, and to limit the burden upon the citizens who should be selected for jury duty; and, in so doing, the court simply performed the duty which the statute places upon the court, and which the court is required to perform. This question has been discussed in the cases of *U. S.* v. *Dixon*, 44 Fed. Rep. 401, and of *U. S.* v. *Wan Lee*, Id. 707, and the conclusions reached are not in accord. The view taken by Judge HOFFMAN in the former case, adverse to the conclusion we have reached, was doubtless largely affected by the form of the indictment in the case before him, in which it was recited that the indictment was found "by the grand jurors of the United States of America for the northern division of the district of Washington."

In the case now under consideration the indictment properly recites that it was found by the grand jurors for the district of South Dakota. The legal name of the court is the "District Court in and for the District of South Dakota," and a grand jury, when summoned, although from a part only of the district, becomes, when impaneled and sworn, a grand jury of the district court in and for the district of South Dakota. No question therefore arises on the form of the indictment in this case in this particular; the motion to quash being based upon the fact that the *venire* directed the jurors to be summoned from a part only of the district. Upon this question we entertain no doubt that the action of the court was not only strictly legal, but that it was imperatively demanded of the court in fairly carrying out the true meaning of section 802 of the Revised Statutes.

The motion to quash the indictment is therefore overruled.

EDGERTON, J., concurs.