**MARVEL v. ZERBST, Warden.**

**No. 1388.**

Circuit Court of Appeals, Tenth Circuit.
May 11, 1936.

Rehearing Denied June 17, 1936.

---

John B. Boddie, of Chicago, Ill., for appellant.

Summerfield S. Alexander, U. S. Atty., and D. C. Hill, Asst. U. S. Atty., both of Topeka, Kan., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from a judgment denying an application for a writ of habeas corpus.

The facts are these: Marvel, the petitioner, was charged by indictment returned in the District Court of the United States for the eastern division of the Northern District of Illinois containing nine counts with offenses against the United States. Counts 2, 3, 4, 5 and 6 charged offenses committed within the western division of such district and counts 1, 7, 8 and 9 charged offenses committed within the eastern division of such district.

On October 24, 1930, petitioner was arraigned on counts 2, 3, 4, 5, 6 and 9 at Chicago in the eastern division of such district and entered pleas of guilty to each of such counts. The remaining counts were dismissed on motion of the United States Attorney.

The court sentenced petitioner to be confined in the United States Penitentiary at Leavenworth, Kansas, for a term of fifteen years, on each of counts 2, 3, 4, 5 and 6, the sentences to run concurrently, and to pay a fine of $1,665 on count 6, and to be confined in such penitentiary for a term of two years on count 9, the sentence on count 9 to run concurrently with the sentence on count 2.

The indictment recited that the grand jury was "empaneled and sworn in the District Court of the United States for the eastern division of the Northern District of Illinois at the September term of said court in the year 1930, and inquiring for said division and district."

Petitioner challenged the validity of the indictment with respect to counts 2, 3, 4, 5 and 6 and the sentences imposed thereon because such counts charged offenses· committed in the western division, and the indictment was returned and he was arraigned and sentenced in the eastern division.

28 U.S.C.A. § 114, in part reads:

"All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district. When a transfer is ordered by the court or judge, all the papers in the case, or certified copies thereof, shall be transmitted by the clerk, under the seal of the court, to the division to which the cause is so ordered transferred; and thereupon the cause shall be proceeded with in said division in the same manner as if the offense had been committed therein."

▮ Prosecution as used in this section does not include the finding and return of an indictment.[1]

▮ A grand jury may be drawn from the body of a district, impaneled by the court sitting in a particular division thereof, and instructed to inquire into and make presentment of offenses committed in any part of the district. When the indictments have been returned in the division where the grand jury is in session, the court should remit them for trial to the respective divisions where the offenses are charged to have been committed except in cases where the defendant consents to a disposal in another division.[2]

▮ The grand jury that returned the indictment against petitioner was impaneled to inquire for the district as well as the eastern division thereof. The record does not show it was drawn from the entire district. However, it does not show the contrary, and in this, a collateral pro-

---

[1] In construing section 114, supra, the Supreme Court, in Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, said:

"The indictment was returned in the District Court for the District of South Dakota when sitting in the Western Division, and the offense was charged as committed in the Southern Division; but the grand jury which returned the indictment had been impaneled from the body of the district, regardless of the divisions, and instructed to inquire into and make due presentment of offenses committed in any part of the district. After receiving the indictment, the court, at the suggestion of the United States attorney, remitted it to the Southern division for trial and other proceedings.
* * *

"The contention is that the word 'prosecution' in the general provision includes the finding and return of an indictment. That the word sometimes is used as including them must be conceded. But there are also relations in which it comprehends only the proceedings had after the indictment is returned. Here we think it is used with the latter signification. It appears twice in the provision, doubtless with the same meaning. The first time is in the clause directing that 'all prosecutions' be had in the division where the offense was committed, and the second is in the clause permitting the court or judge, at the instance of the defendant, to order 'the cause to be transferred for prosecution' to another division. The connection in which it appears the second time

shows that it refers to the proceedings after the indictment is found and returned; that is to say, after there is a cause susceptible of being transferred. Besides, had Congress intended to put an end to the prevailing practice of impaneling a grand jury for the entire district at a session in some division and of remitting the indictments to the several divisions in which the offenses were committed, unless the accused elected otherwise, it is but reasonable that that intention would have been expressed in apt terms, such as were used in some of the exceptional special statutes. That practice was attended with real advantages which should not be lightly regarded as put aside. In many divisions only one term is held in a year. If persons arrested and committed for offenses in those divisions were required to await the action of a grand jury impaneled there, periods of almost a year must elapse in many instances before a trial could be had or an opportunity given for entering a plea of guilty and receiving sentence."

See also Logan v. U. S., 144 U.S. 263, 297, 12 S.Ct. 617, 36 L.Ed. 429; Biggerstaff v. U. S. (C.C.A. 8) 260 F. 926, 927.

[2] Salinger v. Loisel, 265 U.S. 224, 235, 236, 237, 44 S.Ct. 519, 68 L.Ed. 989; Wininger v. U. S. (C.C.A. 8) 77 F.(2d) 678; Biggerstaff v. U. S. (C.C.A. 8) 260 F. 926; Borgia v. U. S. (C.C.A. 9) 78 F.(2d) 550, 553; Hill v. U. S. (C.C.A. 8) 15 F.(2d) 14, 15; Poffenbarger v. U. S. (C.C.A. 8) 20 F.(2d) 42, 45.

ceeding, there is a presumption of regularity.[3]

[Image] Furthermore, if all the members of the grand jury were drawn from the eastern division, the claimed irregularity resulting therefrom was waived by the failure of the petitioner to file a plea in abatement or other like plea before entering his pleas of guilty. Wininger v. United States (C.C.A.8) 77 F.(2d) 678; Shaw v. U. S. (C.C.A.8) 1 F.(2d) 199, 201.

[Image] But even if the grand jurors were all drawn from the eastern division, the counts in question would not be invalid in view of 28 U.S.C.A. § 413, which reads as follows:

"Jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district with such service." [4]

[Image] Under section 114, supra, petitioner had the right to be tried in the western division on counts 2, 3, 4, 5 and 6. But the right was a personal one going to venue only and not to the court's jurisdiction which was co-extensive with the district. It was a right which could be waived and petitioner waived it by submitting to arraignment without objection and entering his pleas of guilty in the eastern division.[5]

The judgment is affirmed.

---

[3] Newman v. Zerbst (C.C.A. 10) 83 F.(2d) 973, decided May 11, 1936; Ex parte Cuddy, Petitioner, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Gentry v. State of Missouri (C.C.A. 8) 32 F.(2d) 159, 161; Archer v. Heath (C.C.A. 9) 30 F.(2d) 932; Williams v. U. S., 1 How. 290, 300, 11 L.Ed. 135; Stockslager v. U. S. (C.C.A. 9) 116 F. 590, 595; Lewis v. U. S., 279 U.S. 63, 73, 49 S.Ct. 257, 73 L.Ed. 615.

[4] See Ruthenberg v. U. S., 245 U.S. 480, 482, 38 S.Ct. 168, 169, 62 L.Ed. 414; Clement v. U. S. (C.C.A. 8) 149 F. 305 (Cert. denied 206 U.S. 562, 27 S.Ct. 795, 51 L.Ed. 1189); U. S. v. Ayres (D.C.S. Dak.) 46 F. 651; Spencer v. U. S. (C.C. A. 8) 169 F. 562, 565, 566; Lewis v. U. S., 279 U.S. 63, 72, 73, 49 S.Ct. 257, 73 L.Ed. 615.

In Ruthenberg v. U. S., supra, the court said:

"It is contended that plaintiffs in error were not tried by a jury of the state and district in which the crime was committed, in violation of the Sixth Amendment, because the jurors were drawn not from the entire district but only from one division thereof. The proposition disregards the plain text of the Sixth Amendment, the contemporary construction placed upon it by the Judiciary Act of 1789 (c. 20, 1 Stat. 73, 88, § 29) expressly authorizing the drawing of a jury from a part of the district, and the continuous legislative and judicial practice from the beginning."

[5] Silverberg v. U. S. (C.C.A. 5) 4 F. (2d) 908, 909; Rosecrans v. U. S., 165 U.S. 257, 263, 17 S.Ct. 302, 41 L.Ed. 708.